Argued and submitted May 11, reversed and remanded in part; otherwise affirmed
November 4, 1992, third-party defendants - respondents' petition for
reconsideration allowed by opinion April 14, 1993
See 119 Or App 181 (1993)

James H. AMMONS,
*Plaintiff,*

*v.*

JACKSON COUNTY,
*Defendant.*

JACKSON COUNTY,
*Third-Party Plaintiff - Appellant,*

*v.*

ROGUE VALLEY MEDICAL CENTER,
an Oregon corporation,
and John S. Campbell,
*Third-Party Defendants - Respondents.*

(90-637-L-6; CA A70551)

840 P2d·1345

Robert E. Franz, Jr., Eugene, argued the cause and filed the brief for third-party plaintiff - appellant.

Lindsey H. Hughes, Portland, argued the cause for third-party defendants - respondents. With her on the brief were Robert M. Keating and Hallmark, Keating & Abbott, P.C., Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges

WARREN, P. J.

## WARREN, P. J.

Jackson County (County) appeals from a judgment dismissing its third-party complaint against Rogue Valley Medical Center and John Campbell, M.D. (defendants). We reverse in part.

The dispute had its genesis in an accident involving a motorcycle driven by plaintiff Ammons. According to County's complaint, which we take as true, *Brennen v. City of Eugene*, 285 Or 401, 405, 591 P2d 719 (1979), Ammons was intoxicated when he lost control of his motorcycle and crashed. Two sheriff's deputies employed by County arrived at the scene and investigated. They took Ammons to Rogue Valley Medical Center, where he was examined by Campbell. The deputies told Campbell that, if Ammons was not injured, they wanted to take him into custody and transport him to the county jail, where they would test his breath for alcohol content. They also told Campbell that they would then release Ammons to his family to be taken home.

County alleges that Campbell told the deputies that Ammons had not received any injuries other than abrasions and bruises, that he was very intoxicated and uncooperative and that they could take custody of him and move him to the county jail. Campbell also told the deputies that Ammons had not been given and should not be given any medication for pain, but that he would be stiff and sore and would therefore complain of pain. He told the deputies that Ammons did not need further medical treatment and that they did not need to take any special precautions. County then alleges that, in total reliance on the representations of Campbell, they took custody of Ammons, transported him to jail and released him after investigation. They did not take any special precautions in handling him, but "treated [Ammons] as a normal, injury-free intoxicated person [who] was capable of supporting his own neck, legs, and back without the need of any supporting devise [*sic*] or assistance." According to County's complaint, Ammons alleges that the deputies' negligent handling of him resulted in injuries.

Ammons and defendants entered into a settlement of his claims against them. He then brought an action against

County. County filed a third-party complaint against defendants in which it alleged that Campbell was negligent in various particulars related to his diagnosis of Ammons and to the information that he provided to the deputies regarding Ammons' condition and what precautions should be taken to prevent further injury. County asserted claims for negligence and common law indemnity, seeking recovery of its economic loss that had resulted and might result from the litigation and any judgment that Ammons might obtain against it. Defendants moved to dismiss for failure to state facts sufficient to constitute a claim, ORCP 21A, and the trial court granted the motion. County then filed an amended third-party complaint, pleading only the negligence claim. The trial court again granted defendants' ORCP 21A motion to dismiss that claim.

■ County first assigns error to the dismissal of its original negligence claim. The trial court dismissed the claim because it concluded that County's prayer for recovery of any judgment Ammons might obtain against it was a claim for contribution, which is barred by defendants' settlement with Ammons. *See* ORS 18.440(3); ORS 18.455(1)(b). We agree with the trial court that the part of the negligence claim seeking recovery of any amount of the judgment that might be entered against County is, in fact, a claim for contribution. On appeal, County asserts that, because it also sought recovery of other damages, the trial court should have denied the motion to dismiss and allowed defendants to move to strike the improper damages. It did not claim that below and cannot do so for the first time on appeal. The trial court did not err in dismissing the original negligence claim.

County next asserts that the trial court erred in dismissing the negligence claim in the amended third-party complaint. The claim is essentially that Campbell's negligent diagnosis of Ammons and his representations to the deputies regarding Ammons' condition resulted in County being sued by Ammons, causing it to incur expenses in defending Ammons' claim.

■ The general rule is that a plaintiff may not recover for purely economic loss that results from the defendant's negligent injury to a third person. *See Ore-Ida Foods v. Indian Head*, 290 Or 909, 916, 627 P2d 469 (1981). Economic loss can be recovered only if there is "[s]ome source of a duty

outside the common law of negligence," *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987), *i.e.*, "some relationship between the parties that gives rise to a duty other than that which exists simply by virtue of the foreseeability of harm." *Onita Pacific Corp. v. Trustees of Bronson*, 104 Or App 696, 708, 803 P2d 756 (1990), *rev allowed* 311 Or 349 (1991). It is not enough that "the harm is a foreseeable consequence of negligent conduct that may make one liable to someone else * * *." *Hale v. Groce, supra*, 304 Or at 284.

County first argues that it may recover for defendants' alleged negligence under the rule recognized in *Restatement (Second) Torts* § 914(2) (1977):[1]

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

Section 914(2) is a rule of damages, not a rule of liability. *Kamyr, Inc. v. Boise Cascade Corp.*, 268 Or 130, 136, 519 P2d 1031 (1974). County must have a viable theory as to defendants' liability before the damages rule of section 914(2) could apply.

Next, County asserts that we should extend our holding in *Onita Pacific Corp. v. Trustees of Bronson, supra*, in which we held that a claim for negligent misrepresentation could lie for purely economic damages, to allow recovery on these facts. In *Onita*, we explained:

> "[I]n order to impose liability in negligence for economic loss alone, there must be some relationship between the parties that gives rise to a duty other than that which exists simply by virtue of the foreseeability of harm. The *Restatement [(Second) Torts* § 552] has formulated a statement of what that might encompass when the negligence involves a misrepresentation:
>
> > " 'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the

[1] Defendants argue that we should not address County's arguments relating to the negligence claim, because it did not make them to the trial court. The issue was raised by defendants' motion to dismiss, and we will address the arguments.

guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'

"'* * * * *

"We agree with the *Restatement* formulation of the relationship and circumstances necessary to give rise to a duty resulting in liability for economic loss alone * * *." 104 Or App at 708. (Citation omitted.)

Claims for purely economic loss have been limited, because they would otherwise "allow limitless recoveries and have ruinous consequences. Such indirect economic losses are too open-ended." *Ore-Ida Foods v. Indian Head, supra,* 290 Or at 917. The purpose of requiring some special relationship is to limit those potentially limitless damages.

County acknowledges that there was no business transaction between defendants and County, as required by the *Restatement,* but asserts that the relationship was sufficient to impose on defendants a duty to exercise due care in advising the deputies. We agree that the facts alleged do not fit within the formulation in the *Restatement;* however, we conclude that the relationship alleged between defendants and the deputies is sufficiently close to create a special relationship giving rise to a duty of care. The complaint alleges that the deputies sought advice from Campbell, Ammons' examining physician, regarding the extent of Ammons' injuries and how they should treat him when he was released to their care. Campbell, in the performance of his profession as a doctor, acted as an expert consultant in providing information that only he could know. In providing the information, Campbell knew and intended that the deputies, who were not medical practitioners, would rely on it in determining how to move and handle Ammons.[2] It was not merely foreseeable

---

[2] County asserts that a doctor has a duty to exercise care in advising those who attend injured or ill persons. *See Annot.,* 63 ALR3d 1020 (1975). The cases collected in the annotation concern the doctor's liability *to the patient* when the doctor has failed adequately to instruct the attendant and injury results from the attendant's conduct. 63 ALR3d at 1023. Those cases do not assist us in determining whether the relationship between the doctor and the attendant is sufficiently close to impose a duty on the doctor to exercise care in preventing economic harm to the *attendant* that results from relying on faulty information.

that the deputies would rely on that information; that was the very purpose of the advice.

This is not a scenario where extending defendant's liability to County will create a danger of "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche*, 255 NY 170, 179, 174 NE 441 (1931) (quoted in *Ore-Ida Foods v. Indian Head, supra*, 290 Or at 917). The deputies were not strangers to Campbell's examination and treatment of Ammons; it may be inferred from the complaint that they were the ones who requested the examination and sought Campbell's expert advice regarding how to handle Ammons. County is entitled to protection against foreseeable harm[3] that it suffered if, as it alleges, its deputies reasonably and without negligence relied on the advice of a physician, whose advice was sought by the deputies, and the deputies' conduct in reliance on that advice caused harm to the patient.[4] The court erred in dismissing the negligence claim in the amended third-party complaint.

■ County next assigns error to the dismissal of its indemnity claim, which was pleaded in the original third party complaint. It first argues that indemnity is not barred by defendants' settlement with Ammons. County is correct. ORS 18.440(5).

Next, it argues that the trial court erred in concluding that the allegations failed to state a claim. In an action for common law indemnity, the plaintiff must plead and prove that

---

[3] We have no doubt that, in this day and age, it is foreseeable that, as a result of injury to Ammons, County might be exposed to a claim of liability and suffer damage, even though it may not have been at fault. *See Oksenholt v. Lederle Laboratories*, 51 Or App 419, 425, 625 P2d 1357 (1981), *aff'd on other grounds* 294 Or 213, 656 P2d 293 (1982).

[4] This case is similar to *North American Co. for Life & Health v. Berger*, 648 F2d 305 (5th Cir), *cert den* 454 US 1084 (1981), in which the court held that an insurance company had a viable claim for negligence against a psychiatrist who had negligently diagnosed 154 air traffic controllers as totally disabled. The plaintiff sought to recover the disability benefits that it had paid to the air traffic controllers. The court considered whether there could be a cause of action when there was no privity between the plaintiff and the defendant. It concluded that the relationship approached that of privity: "At the very least, the relationship was so close that [the defendant] knew exactly who would rely on his certification and for what purpose." 648 F2d at 308. (Footnote omitted.)

"(1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972). (Citations omitted.)

Defendants assert that County does not state a claim, because it alleges that defendants are solely responsible for Ammons' injuries and, therefore, it has not alleged that County may be required to discharge a legal obligation it owes to Ammons. County asserts that its claim is proper, because it is pled in the alternative: *If* it is found liable to Ammons, *then* that liability should be discharged by defendants.

County has stated a claim for indemnity. In *Scott v. Francis*, 314 Or 329, 838 P2d 596 (1992), two lawyers, Lopez and Jackson, were retained to assert a medical negligence claim. Lopez represented to Jackson that there was no time pressure to file the claim. Jackson relied on that representation and filed the complaint after the statute of limitations had run. The client sued both attorneys for their negligence and each contributed to a settlement with the plaintiff. Jackson sought indemnity from Lopez for the amount that he paid in settlement of the claim, plus his costs of defense. The Supreme Court concluded that the trial court erred in directing a verdict for Lopez:

"A jury could find that Jackson's failure timely to file stemmed solely from his reliance on Lopez's misrepresentation that there was no time pressure for filing the claim. A person who is induced to act as a result of another's misrepresentation, and thereby becomes liable to a third person, is not necessarily in equal fault with the person who made the misrepresentation. Joint liability does not necessarily mean equal fault. Although Jackson and Lopez were *liable* to plaintiff, a jury could find that Lopez, as a result of his misrepresentation, was primarily *responsible* for the tort and should therefore indemnify Jackson." 314 Or at 334. (Emphasis in original.)

This case is indistinguishable in principle from *Scott*. County alleges that it acted in total reliance on the representations of Campbell in handling Ammons and that, if Ammons was injured by the deputies, the injury resulted

from defendants' negligent representations. Those allega-
tions are sufficient to assert a claim for indemnity on the
theory that, if County is held liable, its *responsibility* for the
harm is attributable solely to defendants' misrepresentation
regarding Ammons' condition. *See* 314 Or at 334. If the
allegations are true, County is entitled to indemnity from
defendants. The trial court erred in dismissing the indemnity
claim.

Reversed and remanded on indemnity claim in the
original third-party complaint and on negligence claim in the
amended third-party complaint; otherwise affirmed.